## LEMOINE v. THOMAS et al. *
### No. 4877.

Court of Appeal of Louisiana. Second Circuit.

Nov. 2, 1934.

Gordon Boswell, of New Orleans, Irion & Switzer, of Shreveport, and John G. Gibbs, of Natchitoches, for appellants.

S. R. Thomas, of Natchitoches, for appellee.

MILLS, Judge.

This is a personal injury action arising out of the meeting, on the Grand Ecore bridge between Natchitoches and Clarence, of a horse being ridden by plaintiff and an automobile driven by Mrs. Orlean Thomas, who is joined as defendant by her insurer, the Ocean Accident & Guarantee Corporation, which presents the conflict of testimony usual to such cases.

Plaintiff testifies that on March 29, 1933, he was riding from Natchitoches toward Clarence, on a gentle horse accustomed to meeting automobiles and unafraid of them; that he was crossing the steel bridge over Red river at Grand Ecore when he saw Mrs. Thomas' car approaching from Clarence,

*Rehearing denied December 5, 1934.

"pretty fast"; that the car did not stop but continued onto the bridge; that he kept as close as he could get to the rail on his right; that the horse shied and wheeled in an effort to avoid the car and was struck in the side; throwing plaintiff to the floor of the bridge, and causing injuries to his left ankle and leg and arm, and his right knee, for which he sues. He alleges that he was using a saddle with a brand new girth and did not beckon to Mrs. Thomas to come on.

Plaintiff's chief witness is a fisherman living on the Clarence side of the river bank about 25 yards from the bridge, and on a level about 8 feet below it. He testifies that when the accident occurred he was sitting on the ground in front of his house; that he saw Lemoine on the bridge riding as close as he could get to his right-hand rail; that Mrs. Thomas did not stop but continued on across, making about 20 or 25 miles per hour; that when the car was within 8 feet of the horse, the animal turned and was struck by it, knocking both horse and rider down. He says the car was "more the left than she was on the right" and was stopped within 15 or 20 feet of the place of impact; that he figures he was about 200 yards away; and that he did not see Lemoine give any signal inviting the driver of the car to come on.

As plaintiff's other witnesses saw nothing until after the occurrence, their testimony as to the facts is not helpful.

It is admitted that the wooden approach of the bridge is 19½ feet wide; that the iron span is 15 feet wide inside the rails, the entire length of the bridge being 730 feet. Photographs filed in evidence show that there is room for two cars to pass on the steel part of the structure. The accident occurred on the steel span, 25 or 30 yards back from the wooden approach on the Clarence side.

For the defense, Mrs. Thomas testifies that at about 3 o'clock on March 29, 1933, she, accompanied by her mother, was driving a two-passenger coupé from Clarence toward Natchitoches; that she stopped on the wooden approach when she saw Lemoine on the bridge, and proceeded only after he had motioned with his left hand for her to come on across; that she was driving very slowly, not more than 9 or 10 miles per hour, on her right-hand side of the bridge; that when the head of the horse was about even with the front of her car the animal suddenly whirled to its right without preliminary warning or evidence of fear, and practically sat down on the headlight; he lunged again, throwing Mr. Lemoine to the floor of the bridge. The horse did not fall or run away. The saddle came off the horse and was examined by her. She says the girth was secured with ordinary cord or string, which was broken. Lemoine was assisted into the car, which she says was so close to its right-hand rail that she had to drive on to get room enough to open the door. He was then taken to a physician in Natchitoches.

The testimony of Mrs. Orlean Thomas is entirely corroborated by that of her mother and companion on the trip, Mrs. I. L. Thomas. She is an experienced and accomplished horsewoman. She, too, examined the saddle girth, which she says had been tied with about three-ply old wrapping twine, which broke, causing Lemoine and the saddle to slip off the horse. She says that her daughter's car was so close to its right-hand rail that she had difficulty in opening the door to get out.

There is no effort made in any way to impeach the testimony of these two ladies. Mrs. Orlean Thomas had $5,000 liability insurance on the car. As the amount sued for is only $2,950, she is without financial interest in the case. The whole occurrence was immediately before them. They are in a position to testify with accuracy as to the facts in the case.

Plaintiff offers as witnesses of the occurrence only himself, directly interested, and the fisherman who was 25 yards to the side of, and 8 feet below, the bridge and, according to his testimony, 200 yards away. He certainly was not in a favorable position to see with exactness what occurred.

We therefore conclude that plaintiff has failed to produce the necessary preponderance of testimony as to the disputed facts in the case and that the judgment can only be sustained, if at all, on the ground of negligence per se because of the violation of the alleged police jury ordinance. Poole v. Perretz, 13 La. App. 110, 127 So. 439.

This ordinance is pleaded as follows: "Petitioner further shows that it is a violation of the ordinances or resolutions of the Police Jury of Natchitoches Parish for any one operating a motor vehicle to attempt to pass an animal drawn or driven vehicle on the Grand Ecore Bridge, and that one violating said ordinance may be subjected to prosecution and fine or/and jail."

Further, that at the time of the accident Mrs. Thomas was violating the resolution or ordinance referred to.

This allegation is patently vague and is subject to attack by proper exception. No such attack is made, counsel for defendants contenting themselves with denying this article for lack of information and with objecting to the introduction of the ordinance on trial.

It is well settled that testimony will not be excluded under vague allegations unless same are timely excepted to.

The note of evidence shows, on page 40:

"Plaintiff offers, produces and files in evidence the resolution of the Police Jury of Natchitoches Parish adopted in February, 1922, with reference to the operation of motor vehicles on bridges, on page 85 of the minute book, with leave to substitute certified copy."

The admission of the resolution was objected to on the ground of the vague pleading, that there is no allegation that it is in force and unrepealed. We think that the allegation, though vague, that the ordinance was being violated, not excepted to, is a sufficient allegation to make this objection futile. But there is a further objection that the ordinance as set out in plaintiff's petition includes only animal drawn vehicles and that one referring to horses being ridden is at variance with the pleading. We think the ordinance should have been excluded on this objection. As penal ordinances are always strictly construed, defendants were not by the pleading put upon their guard as to any ordinance or resolution covering saddle horses unattached to any vehicle.

There appears in the record a purported copy of an ordinance of the Natchitoches parish police jury. The certificate of the secretary, dated April 19, 1934, just one day before the transcript was filed in this court, identifies the ordinance only by its date, which is given as February 6, 1922. In the offering at the time of trial it is identified by the page on which it appears, the exact date of its adoption not being given. Furthermore, the offering refers to an ordinance with reference to the operation of motor vehicles on bridges, whereas the ordinance offered is limited in effect to the Grand Ecore bridge and prohibits motor vehicles from closely approaching or passing "any horse or other draft animal being led, ridden or driven." We think this constitutes a fatal variance.

There is no indorsement of the clerk upon the copy showing that it was ever filed in evidence. It could not have been offered at the trial as the copy was only made the day before the filing of the transcript in this court. There is nothing in the record to show when or by whom it was put in the transcript.

Counsel for defendant, in a motion to expunge, allege that the copy was inserted in the record after it had been lodged in this court. If we remember correctly, this was admitted on oral argument, counsel for plaintiff stating that when he obtained the record from this court for the preparation of his brief, he noticed the omission and had the clerk of the trial court insert the copy of the ordinance.

We are not favored with a written opinion in support of the judgment appealed from, which was in favor of plaintiff, but we are informed in defendants' brief that the case was decided because of the violation of the ordinance and that the credibility of the witnesses and other issues were not discussed by the court.

It is well settled that courts do not take judicial cognizance of the ordinances of police juries (Liberty Mutual Ins. Co. v. Benton [La. App.] 153 So. 479), and that documents not filed in evidence in the lower court will be disregarded on appeal. (New Orleans v. Gaines, 22 How. 141, 16 L. Ed. 295).

The copy of the ordinance appearing in the record could not have been considered by the lower court whose judgment is dated March 24, 1934, whereas the copy was not certified to until April 19th of that year.

For the reasons above given, we find that there is not sufficient preponderance of the evidence to support a judgment for plaintiff outside of the allegation of negligence per se resulting from a violation of an ordinance. Finding as we do that the purported ordinance appearing in the record cannot be considered by us, we have no alternative but to reverse the judgment of the lower court. Even if we are wrong in this, the ordinance cannot be considered because Act No. 296 of 1928 regulates traffic on public highways of the state and repeals all laws in conflict therewith. Unquestionably, a bridge is a part of the highway.

Section 67 of the act reads in part:

"Every person operating a motor vehicle shall bring the motor vehicle and motor to a stop when approaching a horse or other draft animals being led, ridden or driven if such animal appears to be frightened, and

if the person in charge thereof signs to do so."

Section 35 provides, with certain exceptions not applicable to this case, that local authorities shall have no power to enact or enforce any rules or regulations contrary to the provisions of the act.

The provisions of the police jury ordinance found in the record are contrary to those found in section 67 of the act in that a motorist meeting a draft animal on the Grand Ecore bridge is required to stop regardless of any appearance of fear on the part of the animal. The ordinance then was repealed by the act.

For the reasons assigned, the judgment appealed from is reversed and plaintiff's demand is rejected at his cost.